OPINION OF THE COURT
Stanley Gartenstein, J.
Defendant, who is accused of reckless driving (Vehicle and Traffic Law § 1190); and driving while intoxicated (Vehicle and Traffic Law § 1192 [2]), is the first cousin of an Assistant District Attorney of New York County. He bears the same surname as his cousin.
Upon arraignment, because the Trial Bureau to which defendant’s cousin is assigned was on “intake” that day, the case was allocated to the Criminal Court All-Purpose Part in which said Bureau functions. When this fortuitous coincidence was discovered, the case was reassigned to a different Trial Bureau within the District Attorney’s office and transferred to a different All-Purpose Part not served by that Bureau.
Defendant moves for an order disqualifying the Office of the District Attorney of New York County from prosecuting this *674 matter and appointing a special prosecutor pursuant to County Law § 701. In support of this motion, he claims that the very act of transferring this case internally within the office is itself an indication of special treatment; that the new Assistant District Attorney has already made clear her subjective knowledge of the reassignment and the reasons for it; that the test of fairness is not only the subjective state of mind of the participants but also the objective effects of their conduct. The net effect of these arguments, it is claimed, is an unavoidable appearance of impropriety which cannot help but work to his detriment.
Defendant argues that the District Attorney’s office will go out of its way to dispel any inference of favoritism, thereby eliminating plea bargaining* and other courtesies extended during the normal prosecution of the average case. He further contends that since the District Attorney’s office is one law firm, i.e., a single entity under the law (cf. Santobello v New York, 404 US 257), the entire office is tainted as a matter of law with this appearance of impropriety.
Preliminarily it is in order to point out that “The District Attorney is a public officer. His duties are quasi-judicial in nature. His obligation is to protect, not only the public interest, but also the rights of the accused. In the performance of his duties, he must not only be disinterested and impartial, but must also appear to be so (People v Lombard, 4 AD2d 666, 671; People v Fielding, 158 NY 542, 547). His primary duty is to see that justice is done. Because he is presumed to act impartially (People v Fielding, supra, p 547) he has wide latitude to determine whom, whether and how to prosecute (Matter of Johnson v Boldmen, 24 Misc 2d 592; Matter of Hassan v Magistrate’s Ct. of the City of N. Y., 20 Misc 2d 509, app dsmd 10 AD2d 908, cert den 364 US 844; Matter of Coleman v Lee, 1 Misc 2d 685).” (People v Lofton, 81 Misc 2d 572, 575-576.)
The power of a criminal court to supersede a prosecutor is governed by County Law § 701 which reads in pertinent part: “Whenever the district attorney of any county and his assistant, if he has one, shall not be in attendance at a term of any court of record, which he is by law required to attend, or is disqualified from acting in a particular case to discharge his duties at a term of any court, a superior criminal court in the county wherein the action is triable may, by order appoint some attorney at law having an office in or residing in the county * * * to act as special *675 district attorney during the absence, inability or disqualification of the district attorney and his assistant * * * The board of supervisors of the county shall pay the necessary disbursements of, and a reasonable compensation for, the services of the person so appointed and acting, as certified by the presiding judge or justice.”
It is significant to note that the restrictive language referring to a “superior criminal court” was added in 1974 (L 1974, ch 456) and that these words replaced a more general reference to “the court”. This would appear to foreclose consideration of the application before use without prejudice to renewal in a superior criminal court.
A reading of the statute, however, with particular reference to the body of enactments into which it has been codified, evokes fascinating doubts as to its primary thrust. A credible argument can be made, in spite of the specific language limiting this prerogative to a superior criminal court, for the proposition that this is primarily a funding statute owing to its position in the County Law rather than in the Criminal Procedure Law and that the language pertaining to funding, viz., that an order of a superior criminal court thereunder becomes, by operation of law, a charge upon the county — is in fact the important provision to the exclusion of the introductory language. This construction would appear to be reasonable by implication if in fact the traditional practice of recognizing prosecutors other than the Attorney-General or County District Attorneys in local criminal courts (the New York City Criminal Court included) is still sanctioned notwithstanding the seemingly restrictive 1974 amendment limiting this power to superior criminal courts.
It has been held that where the District Attorney of any county is aware of a prosecution or a term of court in which prosecutions are ordinarily held and chooses not to appear therein, he is held to have consented to prosecution by others. (People v Van Sickle, 13 NY2d 61; People v Czajka, 11 NY2d 253; People v DeLeyden, 10 NY2d 293; People v Leombruno, 10 NY2d 900; People v Schildhaus, 4 NY2d 883.) This line of cases specifically includes prosecutions in local criminal courts in addition to those pending in a superior criminal court. It would appear that these cases are at variance with the seemingly restrictive terms of section 701 whose introductory phrase reads “Whenever the district attorney * * * shall not be in attendance at a term of any court of record”. Thus, the line of cases sanctioning prosecution by persons other than the District Attorney in a local criminal court where he chooses not to appear *676 would appear to conflict, at least at first blush with the terms of the statute — if their import is to be considered as a source of the court’s authority to appoint as opposed to the power to charge the county when it does in fact exercise this apparently inherent (cf. People v Burgos, NYLJ, Sept. 2, 1980, p 5, col 1; People v Kissling, App Term, 1st Dept, docket No. 48206/1981, July 7, 1981) power. This reading of section 701 would appear to be consistent with the existence of New York City Criminal Court Act § 50 which empowers this court to order a complaint upon application to it, a scheme which seemingly infringes on the Criminal Procedure Law’s award of uncontrolled discretion to decline prosecution to a District Attorney (cf. Matter of Hassan v Magistrate’s Ct., 20 Misc 2d 509; Inmates of Attica Correctional Facility v Rockefeller, 447 F2d 375). Nevertheless, the existence of this power preserves a venerated tradition (cf. People v Vlasto, 78 Misc 2d 419) and the statute validating it supersedes the Criminal Procedure Law where the two are inconsistent and an alternate scheme is prescribed for this court (NY City Crim Ct Act § 41 [2]).
While it would be possible to grant the application in question based upon this liberal construction of the statute, the basic fact emerges that we deal here not with a situation where a District Attorney consents by implication to prosecution by others as contemplated by the Van Sickle (supra) line of cases, but one where he is in fact prosecuting and vigorously resists any application to supplant him. In this area, it would appear that a literal reading of the statute, whether its original import be financial or otherwise, would be appropriate. We accordingly so hold in deference to the specific statutory limitation of jurisdiction to appoint a special prosecutor to a superior criminal court.
Having so held, certain observations are appropriate.
The Office of the District Attorney of New York County has an unmatched national reputation for integrity and credibility. This reputation did not materialize out of thin air. It has been painstakingly built, case by case over literally hundreds of thousands of prosecutions. We respectfully believe it to be the court’s function in every case where it is appropriate — and this case falls into that category — to protect this reputation with the same zeal which the prosecutor would show in protecting the court institutionally. It is therefore in order to point out that had the court not held itself without jurisdiction, it would nevertheless have denied this motion as having no basis under the Canons of Ethics or under any reported stare decisis.
*677 In dealing with disqualification of a prosecutor, the cases are unanimous for the proposition that actual cause as opposed to an appearance of impropriety is the minimum threshold necessary for court intervention. (People v Krstovich, 72 Misc 2d 90 [District Attorney clearly disqualified as victim of crime being prosecuted]; People v Loewinger, 37 AD2d 675 [District Attorney not disqualified merely because Chief Assistant had represented defendant on traffic charge related to incident in question]; Matter of Kelley, 83 Misc 2d 776 [District Attorney not disqualified upon application of Police Commissioner being investigated by Grand Jury simply because bitter civil litigation pending between them]; People v Schrager, 74 Misc 2d 833 [District Attorney disqualified on own motion when defendant was an Assistant District Attorney who shared professional and personal relationships with members of office].) As to the appearance of impropriety on the other hand, the District Attorney, being an attorney subject to the Canons of Ethics and responsible for the ethical posture of his office (cf People v Fielding, 158 NY 542; Code of Professional Responsibility, Canon 5; People v Schrager, supra; People v Ferdinando, 40 AD2d 714), recusal or an application for same is within his sole discretion, and though a court may look upon recusal with approval or even suggest it (cf. Matter of Kelley, supra; 31 ALR3d 953, 982), the decision belongs exclusively to the District Attorney.
With respect to the exercise of this discretion, the court commends attention to Matter of Fox v Shapiro (84 Misc 2d 223) and People v Cruz (55 AD2d 921). In these related cases, the former Chief Attorney of the Legal Aid Society of Orange County had been appointed by the Governor as District Attorney. The court held there to be no ipso facto conflict attributable to this fact alone. In the latter case, Shapiro had been Chief Attorney of the Society at defendant’s arraignment. The Appellate Division, Second Department, pointed out that he had taken steps to isolate himself from the prosecution of all cases pending in a similar posture and framed the issue solely on the basis of any demonstrable prejudice which may have resulted to defendant. The court remitted the proceeding for a hearing as to what knowledge Mr. Shapiro might have had about this specific case and whether he transmitted this information to anyone else.
The District Attorney is a public officer who is presumed to act in accordance with his mandate and ethical standards. (People v Lofton, 81 Misc 2d 572, supra; People v Fielding, supra, p 547.) “Under long-standing principles of law, this court must presume, until the contrary is shown, that officers vested with discretionary power exercise their power consistent with their *678 fiduciary obligation to their [general] governmental unit and to the people in general (Matter of Delicati v Schechter, 3 AD2d 19, 20)” (People v Lofton, supra, p 576). The court finds no basis to believe that any internal standard short of the highest ethical one has been applied to this prosecution.
Understandably, this is one of those uncomfortable situations which do arise in life where all concerned would have preferred that the underlying incident, whatever did in fact transpire, had not placed them in this position. It is obvious that every possible step has been taken internally to avoid even a whisper of impropriety. The District Attorney’s office appears to have more than fully complied with all safeguards suggested by the Shapiro (supra) line of cases. These Appellate Division holdings are not only good law but they in fact emanate from the single most appropriate court having jurisdictional responsibility over counsel’s compliance with ethical guidelines. We are at a loss to think of a more appropriate ethical standard for any attorney to follow.
Motion denied.

 This argument falls in the face of a policy of the New York County District Attorney’s office not to plea bargain in cases involving driving while intoxicated.