OPINION OF THE COURT
Kenneth K. Rohl, J.
Defendants, Suffolk County Police Captain John Gallagher (four counts) and Suffolk County Police Officer Albert Sinram (one count), are alleged to have prepared and thereafter filed with the Suffolk County District Attorney falsified police forms which resulted in Gallagher’s son, Timothy, receiving a *282 sentence of probation (as opposed to incarceration) on a pending narcotics conviction. The forms claim that Timothy Gallagher, acting as a police informant, provided information leading to narcotics arrests whereas he allegedly never engaged in such role.
Presentation of this case to the Grand Jury was by Stephen P. Scaring, Esq., a Special District Attorney appointed pursuant to County Law § 701.
Defendants seek dismissal of all charges contending that Scaring’s appointment was both illegal and unconstitutional.
Initially, these charges surfaced during an investigation by the Temporary State Commission of Investigation (Commission) into claims of misconduct by the Suffolk Police Department and the District Attorney’s office. Similar inquiry was also undertaken by the United States Attorney, Eastern District, New York.
On May 27, 1987, Assistant District Attorney Steven A. Hovani applied to Hon. Thomas M. Stark, Supervising Justice, for appointment of a Special District Attorney pursuant to County Law § 701 to investigate "possible charges against Suffolk County law enforcement officials or personnel”. In relevant part, Hovani averred:
"4. The United States Attorney for the Eastern District of New York and the Federal Bureau of Investigation have concluded an investigation into allegations of wrongdoing in connection with the disposition of charges against Timothy Gallagher. That office has advised that while no violations of federal law occurred serious misconduct and State law violations may have been committed by Suffolk County law enforcement officials * * * Members of this office, including District Attorney Patrick Henry, are material witnesses in this matter.
"5. In order to avoid any resulting appearance of impropriety and/or potential or arguable conflicts * * * the District Attorney has disqualified himself and his assistants from participating in any further action with respect to matters related to or arising out of the foregoing incident” (emphasis added).
On May 29, 1987, Justice Stark appointed Harvey Arnoff, Esq., as Special District Attorney.
In a letter request dated June 16, 1987, David G. Trager, Commission chairman, asked Justice Stark to revoke ArnofFs appointment variously claiming (1) that the Suffolk District *283 Attorney violated a verbal agreement to inform the Commission regarding any application for a Special District Attorney; (2) Arnoff was inexperienced in criminal matters; (3) that if experienced, issues exist (but not specified) regarding ArnofFs relationship with the District Attorney’s office; (4) ArnofFs proposed choice of investigators raises questions as to his suitability as a Special District Attorney; and (5) conflict of interests (again unspecified). Also unexplained is why a copy of this letter request was forwarded to Hon. Milton Mollen, Presiding Justice, Appellate Division, Second Department.
In letters to Trager and Justice Stark on June 18, 1987 and June 23, 1987, respectively, Arnoff and District Attorney Patrick Henry voiced their objections to the June 16 allegations.
On July 20, 1987 Trager withdrew his request for ArnofFs disqualification.
Nevertheless, by short-form order dated August 24, 1987, Justice Stark, sua sponte, revoked ArnofFs appointment stating:
"On May 29, 1987, I appointed Harvey Arnoff to act as special district attorney in two cases in which District Attorney Henry was disqualified from acting * * *

"The investigation and prosecution of these cases requires the special prosecutor to cooperate and work with the State Commission of Investigation * * *

"It has since become evident that Mr. Arnoff does not enjoy the confidence of the State Commission of Investigation. Without such confidence, his continuance in office creates an adversary posture in his relationship with the Commission” (emphasis added).
County Law § 701 provides in relevant part: "Whenever the district attorney of any county and his assistant, if he has one * * * is disqualified from acting in a particular case to discharge his duties at a term of any court, a superior criminal court in the county wherein the action is triable may, by order appoint some attorney at law having an office in or residing in the county, to act as special district attorney during the absence, inability or disqualification of the district attorney and his assistant”.
This statute provides transitory relief to a District Attorney (including his staff) who is disqualified for carrying out his duties as chief law enforcement officer of the county in which elected (Matter of Holtzman v Hellenbrand, 130 AD2d 749; *284 Matter of Board of Supervisors v Aulisi, 62 AD2d 644, affd 46 NY2d 731). "[A]s a general rule, [the court] should remove a public prosecutor only to protect a defendant from actual prejudice arising from a demonstrated conflict of interest or a substantial risk of an abuse of confidence” (Matter of Schumer v Holtzman, 60 NY2d 46, 55).
Here, the District Attorney and his staff were potential witnesses, as well as potential targets, of the Grand Jury to be convened. This is demonstrable cause for their disqualification. ArnofFs appointment was, therefore, proper under the circumstances.
The same cannot be said for the revocation of that appointment.
Although the statutes are silent regarding disqualification of a Special District Attorney, there is no reason to apply a test different from that utilized to disqualify a District Attorney, to wit, demonstrable conflict of interest or substantial risk of an abuse of confidence (cf., Matter of Schumer v Holtzman, supra). Neither is here present.
There is no showing that any conflict would have arisen had Arnoff prosecuted the case or that the public would lack confidence in Arnoff or that there is any risk that Arnoff would abuse that confidence.
The only concern was voiced by the Commission in the June 16 letter — the tenor of which is that the Commission wished to suggest the name of the Special District Attorney for the court’s approval. That they may have lacked confidence in Arnoff is not the test. It is whether the public lacks confidence. To hold otherwise would devolve upon the Commission powers to which it is not statutorily entitled.
Section 7502 of McKinney’s Unconsolidated Laws of NY (L 1958, ch 989, § 2, as amended) provides that the Commission shall have the power to conduct investigations into the conduct of public employees; to hold hearings; to make recommendations and prepare an annual report; and to refer evidence of crimes or misconduct "to the officials authorized to conduct the prosecution or to remove the public officer” (subd [7]). "It has no power to make findings determining guilt or innocence” (People v Mitchell, 40 AD2d 117, 121). It does not indict, present a case to the Grand Jury (cf., Matter of Di Brizzi [Proskauer], 303 NY 206; Matter of Carey [Fischer], 68 AD2d 220) or name or appoint a Special District Attorney (County Law § 701). It may aid the District Attorney in the *285 performance of his official duties only when so requested (subd [4]). It is a conservative watchdog over abuses by public officials, hopefully insuring that power will not corrupt. However, the Commission’s power is assuredly not absolute, for if there is fear of power corrupting there is even greater fear of absolute power corrupting absolutely. The Commission’s temporary nature and the strict limitations placed on it by the Legislature evidence clear intent that it not be prosecutor, Judge, jury and executioner. The 1980’s will not countenance a Grand Inquisitor. The sole purpose of this temporary Commission’s existence is to find facts to be subsequently acted upon by the appropriate prosecutorial entity (People v Mitchell, supra.)
The power to prosecute is vested in the District Attorney or a legally appointed Special District Attorney (NY Const, art XIII, § 13; County Law § 701).
However, in the instant case the Commission seems to have lost sight of its role. It not only attempted to suggest that it should have input in naming the Special District Attorney, but affirmatively sought, and any disclaimer notwithstanding, ultimately obtained disqualification of the person legally named.
Justice Michael F. Mullen’s characterization of the Commission’s actions as "regrettable” is not shared by this court (Matter of Henry v New York State Commn. of Investigation, Sup Ct, Suffolk County, June 20, 1988, index No. 88-3272). That comment is but dicta and not the law of this case.
The Commission’s actions, as evidenced by Trager’s June 16 letter, were an abuse of power and devoid of any legal authority (see, Uncons Laws § 7502). The court concurs with Justice Mullen that the Commission must act responsibly. Most importantly, the Commission must act ethically within its enumerated functions, powers and duties* (Uncons Laws § 7502). Overt attempts by this investigative body to influence an otherwise independent, discretionary appointive power mandate that any subsequent acts so influenced be held without legal effect.
Revocation of ArnofFs appointment is a nullity.
Due process mandates prosecution by "indictment of a grand jury” (NY Const, art I, § 6; US Const 5th Amend) with *286 the case being presented by authorized legal advisors (CPL 190.25 [6]), to wit, the District Attorney (County Law § 700), his Assistant District Attorneys (County Law § 702) or, in the appropriate case, a Special District Attorney (County Law § 701). Presentation by an unauthorized prosecutor impairs the integrity of that Grand Jury and any resulting indictment must be dismissed (People v De Falco, 44 NY2d 482).
The issue is whether an indictment obtained upon a Special District Attorney’s presentation to a Grand Jury under color of legal authority may be sustained. In other words, was Scaring authorized to present the case under the facts at bar.
While not directly on point, case law enunciating principles of attenuation (see, Wong Sun v United States, 371 US 471, and its progeny) is instructive in formulating the test to be applied herein.
Generally, evidence resulting from exploitation of police misconduct will be suppressed (Wong Sun v United States, supra; People v Arnau, 58 NY2d 27) unless the causal connection between the misconduct and the obtaining of the evidence has "become so attenuated as to dissipate the taint” (Nardone v United States, 308 US 338, 341; see also, Parker v North Carolina, 397 US 790).
In Mt. Healthy City Bd. of Educ. v Doyle (429 US 274), respondent, a teacher, was allegedly denied tenure and his contract was not renewed because of a telephone call he made to a radio station regarding school policy. The court, relying on the principles of attenuation, set forth a test of causal connection to determine the legality of respondent’s dismissal. "Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor’ — or, to put it in other words, that it was a 'motivating factor’ in the Board’s decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent’s reemployment even in the absence of the protected conduct” (supra, at 287).
Here, defendants have a constitutional right to indictment by a Grand Jury. Their burden is to establish that the indictment resulted from a presentation by an unauthorized individual — in this case, a Special District Attorney (Scaring) whose appointment was without legal effect because it directly re- *287 suited from the illegal dismissal of the Special District Attorney (Arnoff) first legally appointed. The burden then shifts to the Special District Attorney to establish that the prior dismissal was legal or that, in any event, his appointment would have occurred regardless of the prior illegal revocation.
A hearing is not necessary.
As previously determined, the court has found ArnofFs dismissal to be without legal force and effect. Moreover, the papers and exhibits unquestionably establish that Scaring’s appointment would never have occurred but for ArnofFs disqualification. No evidence is presented to the contrary. Causal connection is complete. There is no attenuation.
Accordingly, the court is constrained to hold Scaring’s appointment null and void and the indictment resulting from his presentation to the Grand Jury must be dismissed. This determination in no way reflects upon Special District Attorney Scaring, who acted throughout with the highest degree of professionalism and ethics pursuant to the appointment he always believed valid.
In summary, both the Special Prosecutor and the appointing Judge are necessarily isolated from outside influence by the provisions of County Law § 701 to insure the independence of counsel and avoid any taint upon the independence of the judiciary (cf., Morrison v Olson, 487 US —, 108 S Ct 2597, 101 L Ed 2d 569).
Here, the Commission and its chairman, in excess of statutory authority, interfered with this requisite independence, tainting the prosecution. The result is dismissal of the charges herein.
All remaining requests for pretrial relief, including claims that County Law § 701 is unconstitutional, are rendered moot.

 Query: Isn’t the Commission legally bound to inquire into possible misconduct within its own ranks and refer any evidence so gathered to the appropriate prosecutorial authority (Uncons Laws § 7502 [7])?